IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


ERNEST WILLIAM CUMBIE,
     Petitioner,

vs.                                                   Case No.: 5:04cv402/SPM/EMT

KEVIN WATSON, Warden,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

     This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 6). Respondent filed an answer and relevant portions of the state court record (Docs. 10, 11). Petitioner filed a reply (Doc. 17).

     The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

     The procedural background of this case is undisputed by the parties. On February 11, 2000, following a jury trial in the Circuit Court for Bay County, Florida, Petitioner was convicted of DUI Manslaughter (Doc. 11, Ex. B at 1–3, 291, Ex. D). On March 13, 2000, Petitioner was sentenced to 155 months of incarceration followed by 25 months of probation (*id.*, Exs. C, D). Petitioner appealed his conviction and sentence to the Florida First District Court of Appeal (First DCA) and raised one issue, that the state failed to prove corpus delicti by substantial evidence independent of

Petitioner's admissions (*id.*, Ex. E). The First DCA affirmed the conviction per curiam without opinion on February 6, 2001, with the mandate issuing February 22, 2001 (*id.*, Ex. H). Cumbie v. State, 778 So. 2d 284 (Fla. 1st DCA Feb. 6, 2001) (Table).

On February 5, 2002, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, asserting two claims of ineffective assistance of counsel: that trial counsel was ineffective for (1) failing to investigate, depose, interview, and call Dr. Rodney Morris as a defense witness at Petitioner's trial; and (2) failing to file a motion to exclude or suppress the test results on blood drawn from Petitioner the night of the accident (Doc. 11, Ex. I). The trial court initially denied Petitioner's motion, but upon Petitioner's motion for rehearing, the trial court held an evidentiary hearing (*id.*, Ex. K). Following the hearing at which both Petitioner and his trial counsel testified, the court denied the Rule 3.850 motion on September 2, 2003 (*id.*, Exs. L, O). Petitioner appealed to the First DCA and presented only one issue: whether his trial counsel was ineffective for failing to call Dr. Morris as a defense witness at Petitioner's trial (*id.*, Ex. P). The First DCA affirmed per curiam without opinion on October 13, 2004, with the mandate issuing on October 29, 2004 (*id.*, Ex. R). Cumbie v. State, 884 So.2d 27 (Fla. 1st DCA Oct. 13, 2004) (Table). Petitioner filed a motion for rehearing, which the First DCA denied (*id.*, Exs. S, T).

Petitioner filed the instant habeas action on November 15, 2004 (*see* Doc. 1 at 6) and the amended petition on January 7, 2005 (*see* Doc. 6 at 6). He challenges his conviction on the following grounds:

> (1) Counsel failed to investigate, depose, interview, and call Dr. Rodney Morris as a defense witness at trial.
>
> (2) Counsel failed to file a motion to suppress or a motion in limine to exclude the results of the blood test.

(Doc. 6 at 4).

Respondent concedes that the petition is timely (Doc. 10 at 14) but argues that Petitioner failed to present his second federal claim to the state courts and is now procedurally barred from doing so (*id.* at 32–34). Petitioner appears to concede that he did not exhaust his second claim, but

requests that his case proceed on his first claim (*see* Doc. 17 at 1, 12).  Finally, Respondent argues

that Petitioner's first claim is without merit (*id*. at 21–30).

II.      STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ

of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on

the ground that he is in custody in violation of the Constitution or laws of the United States."  As

the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for

federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism

and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214,

1218–19.

Section 2254 now provides:

> (d)      An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim–
>> (1)      resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>> (2)      resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the
>> State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in

Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[1]  The appropriate test

in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court
> to grant a state prisoner's application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may
> issue only if one of the following two conditions is satisfied—the state court

---

[1]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the
Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529
U.S. at 367–375, 390–399, 120 S. Ct. at 1499–1503, 1511–1516); and Justice O'Connor for the Court (joined by Justices
Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–413, 120 S. Ct. at
1518–1523).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. *See* Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002).  First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent."  Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002)  (quoting Williams, 529 U.S. at 405)).  "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06).  If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the

"contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting Williams, 529 U.S. at 406).  A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'"  Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).  A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that that [the state court] judgment is infected by constitutional error."  Williams, 529 U.S. at 389.  "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations."  Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted).  Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent.  Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2),

determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence."  Section 2254(e)(1); *see* <u>Miller-El v. Cockrell,</u> 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); <u>Fugate</u>, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); <u>Parker v. Head</u>, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* <u>Crawford v. Head</u>, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations).  Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence.  *See* <u>Callahan v. Campbell</u>, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1308 (11th Cir. 2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

III.    EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[2] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation

---

[2]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
       (A)  the applicant has exhausted the remedies available in the courts of the State; or
       (B) (i)  there is an absence of available State corrective process; or
         (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  <u>Duncan</u>, 513 U.S. at 365-66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In <u>Anderson v. Harless</u>, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7 (citing <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  <u>Anderson</u>, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  *Id.*, 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364.  The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to

mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[3]  The Supreme Court explained,"[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365-66.  Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id.  With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[4]

_____

[3]The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

[4]In  his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. *Id.* A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[5]   Second, the state court's decision on the

---

to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

[5]The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1301-02 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.     PETITIONER'S CLAIMS

A.      Ground one: Petitioner was denied effective assistance of counsel, because counsel failed to investigate, depose, interview, and call Dr. Rodney Morris as a witness for the defense at trial

(Doc. 6 at 4).  Petitioner alleges that his counsel was ineffective for failing to call Dr. Rodney Morris as a defense witness at trial (*id.*).  Petitioner states that Dr. Morris was the physician on duty when Petitioner arrived at the emergency room and that he examined Petitioner and ordered tests (*id.*).  Accordingly, Petitioner contends that Dr. Morris could have testified as to Petitioner's mental status when he arrived at the hospital and to the location of injuries on Petitioner's body, which were consistent with Petitioner being a passenger in the vehicle instead of the driver (*id.* at 4A).

> 1.        Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  Strickland, 466 U.S. at 697.  Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied.  Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034, 124 S. Ct. 2104, 158 L. Ed. 2d 718 (2004); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

> Trying cases is no exact science.  And as a result, we must never delude ourselves that the fair review of a trial lawyer's judgment and performance is an activity that calls for great precision or for a categorical approach.  When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate."  Atkins v. Singletary, 965 F. 2d 952, 958 (11th Cir. 1992).  And, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy."  Devier v. Zant, 3 F. 3d 1445, 1450 (11th Cir. 1993).  Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness

grounds unless it can be shown that no reasonable lawyer, in the circumstances would have done so.

Rogers v. Zant, 13 F. 3d 384, 386 (11th Cir. 1994); Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (to show counsel's performance was unreasonable, defendant must establish that no competent counsel would have taken the action that his counsel did take); Chandler, 218 F.3d at 1313 (issue is not what is possible, prudent, or appropriate, but what is constitutionally compelled) (citing Burger v. Kemp, 483 U.S. 776, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

However, not every strategic decision passes constitutional muster.  Whether a particular decision by counsel was a tactical one is a question of fact, Hardwick v. Crosby, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness.  *See* 28 U.S.C. § 2254(e)(1); Jackson v. Herring, 42 F.3d 1350, 1367 (11th Cir. 1995); Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991). Whether a particular tactical decision was a reasonable one, however, is a question of law, Hardwick 320 F.3d at 1163; Jackson, 42 F.3d at 1367; Horton, 941 F.2d at 1462.  In determining whether counsel's decision was reasonable, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  Wellington, 314 F.3d at 1260.  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  *Id.* (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–406.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Id.* at 695–96.

### 2.    Federal Review of State Court Decision

Petitioner contends that he was denied effective assistance of counsel because his trial counsel failed to call Dr. Morris to testify to the injuries Petitioner suffered as a result of the accident (Doc. 6 at 4). Specifically, Petitioner argues that Dr. Morris could have testified to Petitioner's mental status after the accident and to the fact that Petitioner's injuries were mostly on the right side of his body (*id.* at 4A). Petitioner raised this claim in his Rule 3.850 motion (Doc. 11, Ex. I at 2–10), and the court held an evidentiary hearing on the claim.

During the second day of the evidentiary hearing, Petitioner's trial counsel, Floyd Griffith, testified that during Petitioner's trial, he focused his trial strategy on the issue of who was driving the vehicle at the time of the accident (*id.*, Ex. L at 401[6]). First, Griffith attempted to negate the State's evidence of statements made by Petitioner both at the scene and later at the hospital that he

---

[6]Page numbers for the evidentiary hearing transcript (Doc. 11, Ex. L) refer to the large bold numbers in the lower right hand corner of each page.

had been the driver (*id.*, Ex. L at 395–96; *see also id.*, Ex. B at 151).  To discredit Petitioner's statements, Griffith questioned witnesses from the accident scene about Petitioner's behavior to demonstrate that Petitioner was incoherent and did not know what he was saying when he admitted to being the driver (*id.*, Ex. L at 396).  Griffith brought out during the cross-examination of these witnesses that Petitioner had made several other statements at the scene that were inconsistent or could not be true (for example, Petitioner incorrectly stated that he was fifty-three years old when he was in fact thirty-eight, incorrectly stated that he had been wearing a seatbelt at the time of the crash, stated he was on Prozac even though he had never taken Prozac, and incorrectly initially said he had no abdominal pain) (*id.*, Ex. L at 396; Ex. B at 106–107, 162–163, 171, 173, 214, 216).  Additionally, it was established at trial that Petitioner had extensive physical injuries (including head injuries) from the accident (*id.*, Ex. B at 119, 152, 164, 218, 231) and that Petitioner was on a pain medication when he spoke with the state trooper at the hospital (*id.*, Ex. B at 232).  Griffith argued that those injuries and the sedation resulted in Petitioner's incoherence (*id.*, Ex. B at 22–23, 256, 258–259).  At the evidentiary hearing, Griffith testified that he did not call Dr. Morris to testify as to Petitioner's mental status because Griffith felt he had adequately established that Petitioner was incoherent at the scene (*id.*, Ex. L at 408).  Further, Griffith testified that Dr. Morris did not see Petitioner until at least four hours after the accident occurred, so Griffith did not think that Morris could give a strong opinion as to Petitioner's mental state at the time of the accident (*id.*, Ex. L at 408).

Second, regarding physical injuries that might demonstrate whether Petitioner or the deceased was driving at the time of the accident, Petitioner's counsel testified that the evidence at trial established that there was nobody who could testify that the injuries to either man would identify specifically which man was the driver and which was the passenger (*id.*, Ex. L at 392; *see also id.*, Ex. B).  During trial, Griffith thoroughly cross-examined Dr. Beaver, the medical examiner, on the injuries suffered by the victim and established that the victim's injuries did not definitively place the victim in the passenger's seat (*id.*, Ex. L at 392, 394; Ex. B at 38–46, 52–53; *see also id.*, Ex. B at 21).  Although Dr. Morris could have testified that the Petitioner had broken ribs on his right side, Morris could not testify as to the issue of who was the driver or what caused Petitioner's injuries (*id.*, Ex. L at 402, 406).  Moreover, Petitioner testified that immediately after the accident

his "whole right side felt like it was on fire," and he had blood all over the right side of his jacket (*id.*, Ex. B at 215, 218).  The prosecutor made no attempt to impeach Petitioner regarding the nature and location of his injuries; instead, the cross-examination focused generally on Petitioner's statements, memory, and level of intoxication (*see id.* at 220–232).

Along with the evidence described above, Griffith presented additional evidence that Petitioner was not driving the car.  First, Griffith presented John VanHorn, who testified that he was with Petitioner the night of the accident (*id.*, Ex. B at 183).  VanHorn noticed that Petitioner was intoxicated and "asked him . . . you're not driving, are you.  He said, no, no, no, my friend is driving. I said, well, you know, he showed me the keys, I said, well, give him the car keys" (*id.*, Ex. B at 184).  VanHorn then saw Petitioner give the car keys to the decedent (*id.*, Ex. B at 184).  Next, Griffith presented Boyd Cochran, a professional engineer, who testified that in his opinion, the occupants of the car were ejected when the car hit a pole on the driver's side (*id.*, Ex. B at 184, 200–201).  Griffith argued that the victim's extensive injuries may have been caused when he flew from the driver's seat and hit the pole; hitting the pole may also have resulted in the victim landing closer to the car than Petitioner (*id.*, Ex. B at 263–264).  Additionally, Petitioner testified on his own behalf that he had not been driving the car (*id.*, Ex. B at 208).

Finally, at the evidentiary hearing, Petitioner testified that without Morris's testimony, Petitioner was the only witness to testify about his mental condition and his physical injuries after the accident (*id.*, Ex. L at 394).  However, Petitioner admitted that Griffith elicited from witnesses that Petitioner had head injuries from the accident, was under sedation when he spoke to the trooper in the hospital, and made several other incorrect statements after the accident (*id.*, Ex. L at 402–03). Additionally, Petitioner admitted that during the trial Griffith repeatedly argued that Petitioner's own statements were the only evidence the State had against Petitioner (*id.*, Ex. L at 402).  Petitioner also admitted that Griffith cross-examined Dr. Beaver in great detail about the injuries to the victim (*id.*, Ex. L at 402–403).

In its order denying relief, the Rule 3.850 court made two factual findings.  One, it found that the jury had a reasonable basis to find that Petitioner was the driver based on the violent nature of the accident and Petitioner's statements at the scene that he was the driver (*id.*, Ex. O at 3).  Two, it found that Griffith chose, in light of the evidence and as a matter of trial strategy, to argue that the

victim's injuries were consistent only with the victim being the driver of the vehicle (*id.*, Ex. O at 3).  The Rule 3.850 court applied <u>Strickland</u> and concluded that Griffith's decision not to call Morris to testify about Petitioner's broken ribs was "not so irresponsible as to constitute ineffective assistance of counsel" (*id.*, Ex. O at 3).  The trial court's decision was affirmed by the First DCA.

In its decision, the Rule 3.850 court applied <u>Strickland</u>.  Therefore, the court applied the correct legal rule based on Supreme Court precedent.  Furthermore, this court defers to the trial court's factual findings, as Petitioner has not shown by clear and convincing evidence that the findings were unreasonable. *See* 28 U.S.C. §§ 2254(d)(2), -(e)(1); <u>Callahan v. Campbell</u>, 427 F.3d 897, 926 (11th Cir. 2005) ("[Section] 2254(d)(2) allows for relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' § 2254(d)(2). Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence.").  The remaining question is whether the trial court's finding, that counsel's performance was not so irresponsible as to constitute ineffective assistance of counsel, was an unreasonable application of the performance prong of <u>Strickland</u>.[7]

The state record supports the trial court's finding that Griffith's performance was not so deficient as to constitute ineffective assistance of counsel.  First, Petitioner states that Dr. Morris would have testified to Petitioner's mental status after the accident (Doc. 6 at 4A).  However, Griffith established, without Morris's testimony, that Petitioner was drunk, injured, and making incoherent and untrue statements after the accident.  Morris's testimony would have only established Petitioner's state of mind four hours after the accident, which is less probative than the evidence actually elicited by Petitioner's counsel concerning the circumstances surrounding Petitioner's statements.  Next, Petitioner alleges that Morris could have testified to the fact that Petitioner's injuries were mostly on the right side of his body, which would suggest that Petitioner was in the passenger seat (*id.*).  However, Petitioner himself testified as to his injuries on his right side (Doc. 11, Ex. B at 215, 218), and Petitioner's injuries were not disputed by the prosecution (*see id.*, Ex.

---

[7]The trial court did not address, and did not need to address, the prejudice prong of <u>Strickland</u>.  Therefore, this court's review is limited to the trial court's finding that Griffith's performance was not so deficient as to constitute ineffective assistance of counsel.

B).  Moreover, Griffith elicited on cross-examination of Dr. Beaver that based on the victim's injuries, it could not definitively be said that the victim was the passenger.  Griffith also presented evidence and testimony that the victim's injuries were consistent with the victim being the driver. In light of the evidence presented at trial, Morris's testimony would have been cumulative. Although Morris could have testified that Petitioner's right side was injured, Morris's testimony would not have bolstered Petitioner's defense because Morris could not state that Petitioner's injuries indicated that he was a passenger in the vehicle and not the driver.

Thus, Petitioner cannot show that no reasonable lawyer would have decided not to present Morris's testimony.  In light of the state court record and the Rule 3.850 court's factual findings, this court cannot conclude that the state court's legal conclusion—that Griffith's performance was not so deficient as to constitute ineffective assistance of counsel—was an unreasonable application of Supreme Court law.  Accordingly, the state court's denial of this ineffective assistance claim was not unreasonable.

B.      Ground two: Petitioner was denied effective assistance of counsel, because counsel failed to file a motion in limine to exclude the results of the blood test

(Doc. 6 at 4).  Petitioner contends that after his blood was drawn, the blood remained unrefrigerated in the Trooper's vehicle until the scene investigation was complete (*id.*).  The blood was tested two weeks later by a lab in Tallahassee (*id.*).

As discussed *supra*, to fully exhaust, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan, 526 U.S. at 845 (citing 28 U.S.C. § 2254(c)). Florida law requires either an appeal of each issue, or where a motion for post-conviction relief is appropriate, the filing of such a motion and an appeal therefrom.  Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979).  Failure to exhaust is proper grounds for dismissal of a federal habeas petition.  Keeney v. Tamayo-Reyes, 504 U.S. 1, 10, 112 S. Ct. 1715, 1720, 118 L. Ed. 2d 318 (1992).

Respondent argues that Petitioner failed to exhaust this claim, because Petitioner did not present the claim to the First DCA (Doc. 10 at 32–34), and Petitioner appears to concede that he did not exhaust this claim (*see* Doc. 17 at 1, 12).  Indeed, upon review of the record, Petitioner raised

this claim in his Rule 3.850 motion (*see* Doc. 11, Ex. I at 11–19); however, Petitioner did not appeal the trial court's denial of this claim to the First DCA (*see id.*, Ex. P).  Further, Petitioner has not shown cause and prejudice for his failure to exhaust or that he qualifies under the miscarriage of justice exception.   Therefore, Petitioner's second ineffective assistance of counsel claim is procedurally barred from federal habeas review.

Accordingly it is respectfully **RECOMMENDED**:

That the amended petition for writ of habeas corpus (Doc. 6) be **DENIED**.

At Pensacola this 30<u>th</u> day of October 2006.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**